### HORACE JENNESS *versus* JABEZ TRUE.

Where one owed the plaintiff upon a written contract; and a guaranty that he should perform was indorsed on it by the defendant, the law presumes the plaintiff to have been the party, to whom the guaranty was made, though not named in it.

Plaintiff held a lien contract for the delivery of lumber. He assigned it to A, to secure him for signing an accommodation note, of $1000, which the plaintiff negotiated and sold. In the assignment, he authorized A to use the contract, for making the money to pay the note, if he, the plaintiff, should not, from other sources, supply funds for the purpose.

Afterwards the defendant purchased the plaintiff's remaining rights in the contract, subject to that lien; and gave the plaintiff an obligation that, from the proceeds of the lumber, then in A's hands, the amount of the note should be deducted, for the payment of the note, and for that purpose the defendant supplied some funds to A, which A paid to the holder of the note. A afterwards failed, and the defendant paid to his assignees the amount of the balance, on the note, but they did not pay it over on the note; and the plaintiff was obliged, upon his indorsement, to pay that balance, for which this suit is brought. *Held,* that the defendant, by furnishing the funds to A's assignees, had fulfilled his contract, and was not bound to see to the appropriation of the money.

ASSUMPSIT. The plaintiff sold lumber to W. W. Harris on credit. The contract of sale was signed by both parties. By it, Harris promised to pay the price, and plaintiff retained a lien for his security. Soon afterwards, the plaintiff, wanting to

raise money, procured Adams & Co. to give him their accommodation note of $1000. For security, he assigned to them the Harris contract, and authorized them "to use the contract for the purpose of making, out of the proceeds, sufficient to pay said note, if he, the plaintiff, should not in some other way, place them in funds sufficient to pay it. The plaintiff indorsed the note, and raised money upon it.

Soon afterwards, the plaintiff transferred to the defendant all his remaining interest in the contract. As a part of the trade, the defendant indorsed upon the contract, (then in the possession of Adams & Co.) the following agreements, viz: —

"I hereby guaranty the agreement or contract herein specified on the part of W. W. Harris, and that the sum of $1000 shall be deducted from the proceeds, to be appropriated to the payment of Franklin Adams & Co's note, to Horace Jenness, payable October 27–30, 1846."

"I hereby agree to save Horace Jenness from all and every liability mentioned in this contract with W. W. Harris."

Adams & Co. permitted defendant to manufacture the lumber. Prior to the payday of their note, the defendant had placed $847,38 worth of it in their hands, and that amount they had paid to the holder. The residue of the $1000, with its interest, was paid by defendant to the assignees of Adams & Co. The plaintiff afterwards was compelled, upon his indorsement, to pay the balance, $152,62 of principal and $59,22 interest, and take up the note. It is to recover that amount, ($211,84,) that this suit is brought.

The plaintiff contends that the defendant was bound to pay it, not to the assignees, but to him, to be applied for the discharge of the note, and admits that all other parts of the defendant's contracts had been performed.

The case was submitted to the Court for nonsuit or default, according to the legal rights of the parties. A deposition was referred to. The import of it appears in the opinion of the Court.

*Rowe*, for plaintiff.

In the trade between these parties, the defendant kept back

$1000 to meet the note. He was bound to see it appropriated upon the note. He assumed the plaintiff's liabilities. That he paid to the assignees of Adams & Co. was no fulfilment of his contract.

*A. W. Paine,* for defendant.

A construction is to be given to that part of the defendant's contract, which relates to the $1000 note. No other matter is in controversy. The defendant was, out of the lumber, to supply funds to meet the $1000. He did supply them to Adams & Co., the makers of the note. That this was all he was bound to do, will appear from several considerations.

1. The plaintiff contemplated that the funds should go to them. He was contingently " *to place them in funds to pay the note.*" The defendant was only to do what the plaintiff had been bound to do.

2. The defendant took the lumber under an incumbrance. His only duty was to remove that incumbrance. To do that he must pay the party, who held this note. Adams & Co. were that party. The plaintiffs had assigned the contract to them expressly, that they should " *use it for the purpose of making out of its proceeds, sufficient to pay the note.*" The plaintiff himself had invested them with the lien, and he could by the contract, discharge it only by " *placing them in funds*" to pay the note. They had the legal title to the contract, and it was in their possession.

3. The defendant never agreed to pay any body. He only agreed that, " the $1000 should be deducted from the proceeds of the lumber to pay the note." The lumber was at that time in the control of Adams & Co. by a perfect title, for the same purpose of having that deduction made ; the purpose of retaining so much out of its avails to meet the note. The paper on which the plaintiff relies, could be nothing more than, that he was not to object to Adams & Co's withholding so much of the lumber.

4. The $1000, was merely a loan to the plaintiff. In his arrangement with the defendant his object was merely to secure Adams & Co. He was not seeking security from

*them* through the defendant. There was no distrust of *their* solvency.

5. The defendant bought nothing but a right to redeem. Why should he agree to pay any body? Hence his contract was simply to permit the deduction to be made from the lumber, to the amount of the lien. He took no obligation from any one, that, on his paying the $1000, the lien should be discharged. Who could make the deduction? In other words, who could retain the lumber for paying note? Surely no one but Adams & Co. for the whole of it was in their hands.

6. Payment to plaintiff or to his indorsee, would not have discharged the lien. The defendant could be secure in no other way than by placing the funds in the hands of the makers of the note. His doing it would avoid circuity. For if he had paid plaintiff, it would have been the plaintiff's duty to pay it to them.

7. The contract expresses no consideration. The deposition proves one, and that it moved from Adams & Co. to the defendant. On getting the defendant's contract, they credited to plaintiff the $1000, which they had charged him in account.

When the contract was made by the defendant, the note was outstanding in the hands of some indorsee, whose call for it would be upon Adams & Co. the makers. The parties therefore properly provided that the funds to meet it should be placed in their hands.

The plaintiff contends that the defendant was to see the funds appropriated to the payment of the note. But it was not so. He only stipulated that they might retain lumber for that purpose. The words used, as to the appropriation, only express, not how the defendant, but how Adams & Co. were to use the money. They only express the reason of the detainer by them.

*Rowe*, in reply.

The guaranty by defendant was made at the plaintiff's

request and for a consideration moving from him, and for his benefit alone. Adams & Co. were no parties to it. They did not need it, or desire it. The assignment by the plaintiff had made them secure. They paid no consideration for it. The plaintiff had indorsed the note, and had put funds in the defendant's hands to pay it. The plaintiff had an interest in the solvency of the makers, Adams & Co. The defendant's contract was in fact a guaranty of their solvency; it was an agreement that the note should be paid, in whose hands soever it might be. We do not contend he was to pay it to the plaintiff. In express words, " it was to be appropriated to the payment of the note."

It was therefore the defendant's duty to see the avails of the lien lumber so appropriated.

The amount advanced to Adams & Co. out of the lumber was a mere credit given to them. They received it before the payday of the note. There is no proof that it was placed in their hands towards paying the note. For want of such proof the defence fails. It also fails because Adams & Co., not being a party to the defendant's contract, a payment by him to their assignees, was made in his own wrong.

Shepley, C. J. — A contract was made on June 15, 1846, between the plaintiff and W. W. Harris, by which the plaintiff sold to Harris a lot of timber to be sawed into clapboards, and delivered to the plaintiff at an agreed price.

On July 27, 1846, the plaintiff assigned his interest in that contract to Franklin Adams & Co. " to be held by them for security for the amount" of a note for $1000, made at that time by Adams & Co., and payable to the plaintiff or his order in three months from date. The assignment also provided that Adams & Co. should " use the contract for the purpose of making out of the proceeds sufficient to pay said note, if said Jenness shall not place them in funds sufficient to pay it ; if, however, said Jenness shall place them in funds to pay said note before it shall become due, then this assignment shall become void ; otherwise remain in full force."

Adams & Co. became entitled by virtue of the assignment, to receive all the clapboards from Harris, and to retain so many of them as would be sufficient to pay their note.

On August 21, 1846, the plaintiff sold his remaining interest in that contract to the defendant, who made the following indorsements upon it.

" I hereby guaranty the agreement or contract herein specified on the part of W. W. Harris, and that the sum of one thousand dollars shall be deducted from the proceeds, to be appropriated to the payment of Franklin Adams & Co's note to Horace Jenness, payable October 27-30, 1846; and also the said Harris shall pay all advances, made on account of said clapboards."

" I hereby agree to save Horace Jenness from all and every liability mentioned in this contract with W. W. Harris."

These contracts, signed by the defendant, must be regarded as made with the plaintiff. The latter is so made in express terms. The former is not stated to have been made with Adams & Co; and they were not parties to the original contract made with Harris. The defendant assumed that Harris should perform, and the law infers, that this engagement was made with the other party to the contract made with Harris, although his name is not mentioned. Adams & Co. could not have maintained a suit in their own names against the defendant. Whatever beneficial interest they had, could have been obtained at law, only in the name of the plaintiff.

The contract cannot be explained or varied by parol testimony. So much of the testimony of Ephraim Brown, as attempts to do this, must be excluded. The rights of the parties must be determined by the terms of their written contracts.

There is no provision, that the assignment to Adams & Co. shall cease to be operative, or that the defendant should place funds in their hands to pay their note before it became payable. The defendant stipulated, that Harris should perform. The effect of such performance after the assignment, would be to place the lumber in the hands of Adams & Co. He also agreed, that one thousand dollars " shall be deducted from the

proceeds, to be appropriated to payment of Franklin Adams & Co's note." This deduction could be made only by them, or by the defendant, by leaving that amount of the proceeds of the lumber in their hands. Adams & Co. were entitled to make the deduction, to be appropriated by themselves to the payment of their note. Their rights derived from the assignment, were not diminished by the agreement made between the plaintiff and defendant. The stipulation on the part of the defendant is not, that they shall appropriate the amount to be deducted to the payment of their note, but that so much shall be deducted for that purpose. The defendant does not agree to pay that note. Having purchased the plaintiff's interest, deducting from the estimated value of it the amount of the note, he engaged to deduct the same amount from the proceeds of the lumber, which was to come into the possession of Adams & Co. and to leave it in their hands to pay their own note. This would have fully accomplished the object designed by the parties, if an event not then contemplated by either party, had not subsequently happened by the failure of Adams & Co. For that event no provision was made. A loss has occurred and the question arises, whether the plaintiff or defendant must bear it. The defendant cannot be compelled to assume the risk and bear the loss without some clause in the contract obliging him to do so. In the absence of any engagement to assume it the loss must rest, where it falls by the operation of law.

It is said in argument, that Adams & Co. were not authorized to apply any of the proceeds of the lumber for that purpose, until their note became payable, and that they failed before that time. They received the assignment for security of the amount of their note, and could detain lumber to that amount as soon as sufficient came into their possession against all other persons, unless other funds were provided for payment of their note. The defendant could not otherwise deprive them of that right, and he did not engage to provide funds from other sources.

Rufus K. Hardy testifies, that " clapboards were afterwards

delivered under said contract to Franklin Adams & Co. to an amount sufficient to pay said note and advances, except one hundred and fifty-two dollars and sixty-two cents, before September 4, 1846, which was the time of our assignment. After that time said True paid to our assignees that balance." This is alleged to be a gross attempt to give a false coloring to the transaction ; but upon an agreed statement of facts, making the deposition of a witness a part of that statement, the Court is not authorized to regard the statement as unworthy of credit.

The defendant stipulated, that Harris should pay all advances, but there is no complaint of a failure to perform this engagement.

He also agreed to save the plaintiff harmless " from all and every liability mentioned in this contract with W. W. Harris." The note is not mentioned in the contract made with Harris. It is only mentioned in the assignment with which Harris had no connexion.

The defendant was obliged to deduct the amount of the note from the proceeds of the lumber, or in other words, to leave so much of the proceeds in the hands of Adams & Co., and if he failed to do so there was a failure of performance. He does not appear at any time to have left in their possession or to have deducted the full amount of that sum. There was a lack of $152,62 which was paid at some future day to their assignees. The inquiry is therefore presented, whether that amount was rightfully paid to them. At the time of their failure, Adams & Co. continued to have a valuable interest in the contract, to obtain an amount of lumber sufficient to enable them from its proceeds to pay the note signed by them, or to recover damages as a compensation for a breach of it. That interest was conveyed to their assignees. The plaintiff could not insist, that the damages payable by the defendant, as guarantor of the contract of Harris, should be paid to himself, for he had assented by the assignment, that sufficient lumber to pay their note should be delivered to Adams & Co. The fact that Adams & Co. did not pay the note, which

became payable after their failure, would not destroy their right to receive the lumber or to recover damages, for the assignment was not to become inoperative or void, upon their neglect to pay their note at maturity, but only in case the plaintiff should provide funds to pay it.

The payment by the defendant of the damages recoverable for a breach of the contract by Harris, was therefore rightfully made to the assignees of Adams & Co.  *Plaintiff nonsuit.*